IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger

Civil Action No. 13-cv-02807-MSK-CBS

FIDELITY NATIONAL TITLE COMPANY,
TICOR TITLE OF COLORADO, INC., and
AMERICAN HERITAGE TITLE AGENCY, INC.,

      Plaintiffs,

v.

FIRST AMERICAN TITLE INSURANCE COMPANY,

      Defendant.

_____

### OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT

_____

**THIS MATTER** comes before the Court pursuant to the Plaintiffs' Motion for Partial Summary Judgment (**# 37**), the Defendant's response (**# 38**), and the Plaintiffs' reply (**# 46**); the Defendant's Motion for Summary Judgment (**# 53**), the Plaintiffs' response (**# 63**), and the Defendants' reply (**# 67**); and the Plaintiffs' Motion to Strike (**# 69**) the Defendant's reply or for leave to file a sur-reply, the Defendant's response (**# 70**), and the Plaintiffs' reply (**# 74**).

## FACTS

The Court generally summarizes the pertinent facts here and elaborates as necessary in its analysis. The Plaintiffs are various title insurance companies doing business in Colorado. They entered into contracts with the Defendant ("First American"), a title insurance underwriter, essentially to re-insure the title insurance policies they wrote for customers. The Underwriting Agreement between the parties provided that the Plaintiffs would be liable for what is essentially a deductible – they would reimburse First American up to $ 500 for each payment that First

American made to an insured under the title policies.  (The Court will refer to these as "deductible payments.")

In August 2013, First American filed a lawsuit against the Plaintiffs in the Colorado District Court for Douglas County, alleging that it had made payment on dozens of insurance claims against each Plaintiff between 2007 and 2012.  It alleged a single breach of contract claim against each Plaintiff, contending that the Plaintiffs failed to pay the requisite deductible to First American with regard to each such insurance claim as required by the Underwriting Agreements.

The Plaintiffs then commenced this action, seeking a declaratory judgment that they were not obligated to First American for various reasons.[1]  As set forth in the Amended Complaint (**#39**), the Plaintiffs seek declarations: (i) that First American's claims relating to settlements prior to September 1, 2009 were released by First American in a settlement agreement between the parties resolving prior litigation; (ii) that First American materially breached the Underwriting Agreement by failing to produce claim files and other records relating to the underlying insurance claims at the Plaintiffs' demand; and (iii) that certain insurance claims for which First American sought reimbursement were not actually losses for which the Plaintiffs owe a deductible under the terms of the Underwriting Agreement.  (The Plaintiffs also sought an award of attorney fees arising out of the terms of the 2009 Settlement Agreement.)

First American filed counterclaims (**# 32**) in this action against each Plaintiff – the same breach of contract claims that were asserted (and subsequently dismissed without prejudice) in the Douglas County action.

---

[1]      Most significantly, the Plaintiffs alleged that First American had agreed to a forum selection clause requiring disputes between the parties to be brought in federal court.  Thus, in the instant action, the Plaintiffs initially sought a declaration that the Douglas County action was brought in an incorrect forum.  After the Douglas County suit was dismissed, the Plaintiffs dropped that claim in this action.

The Plaintiffs move **(# 37)** for summary judgment on First American's counterclaims as well as their own requests for declaration of release and non-liability.  They argue that: (i) First American cannot show that every insurance claim that was paid gave rise to a deductible payment under the terms of the Underwriting Agreement; (ii) all of First American's claims against the Plaintiffs  with regard to title insurance claims paid before September 2009 and claims based on title insurance policies written prior to September 2009 were released by operation of a settlement agreement between the parties; and (iii) that claims by First American for losses sustained prior to December 2010 are barred by the three-year statute of limitation (and that a six-year limitation period governing liquidated losses does not apply).

Separately, First American moves **(# 53)** for summary judgment on its breach of contract counterclaims against each Plaintiff.[2]  (First American's motion also contains argument addressing the Plaintiffs' defense of release, including certain arguments it had not made in responding to the Plaintiffs' summary judgment motion.)

## ANALYSIS

### A.  Standard of review

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary.  *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995).  Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Substantive law governs what facts are material and what issues must be determined.  It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party

---

[2]      The Plaintiffs allege that First American raised new issues in its reply brief, prompting them to move **(# 69)** to strike the new arguments or to permit the Plaintiffs to file a sur-reply. Because the Court does not consider or rely upon those arguments in reaching its conclusions here, the Court denies the motion to strike as moot.

with the burden of proof.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989).  A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party.  *See Anderson*, 477 U.S. at 248.  When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial.  *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence.  *See* Fed. R. Civ. P. 56(c)(1)(A).  Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute.  *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999).  If there is a genuine dispute as to a material fact, a trial is required.  If there is no genuine dispute as to any material fact, no trial is required.  The court then applies the law to the undisputed facts and enters judgment.

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required.  If the respondent fails to produce sufficient competent evidence to establish its claim or defense, then the movant is entitled to judgment as a matter of law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

4

This case involves cross-motions for summary judgment. "Because the determination of whether there is a genuine dispute as to a material factual issue turns upon who has the burden of proof, the standard of proof and whether adequate evidence has been submitted to support a *prima facie* case or to establish a genuine dispute as to material fact, cross motions must be evaluated independently." *In re Ribozyme Pharmaceuticals, Inc., Securities Litig.*, 209 F. Supp. 2d 1106, 1112 (D. Colo. 2002); *see also Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000); *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979) ("Cross-motions for summary judgment are to be treated separately; the denial of one does not require the grant of another.").

**B.  First American's claims**

Because the Plaintiffs' claims are all defensive in nature, the Court first considers First American's substantive claims for breach of contract.  Both sides seek summary judgment on these claims.

The Underwriting Agreement between First American and the Plaintiffs  provides in Section 7.2 that the Plaintiffs "shall reimburse First American up to a maximum amount of Five Hundred Dollars . . . on any Single Loss as defined herein actually paid to any or all of the insureds under any single policy."   Section 3.3 defines a "loss" as "the amount of money paid in cash or otherwise to settle, compromise, or pay losses arising out of all claims under any title report" as well as "expenses, costs, and attorneys' fees . . . paid in cash or otherwise in connection with the investigation, negotiation, litigation, and settlement of such claims."  Section 3.4 defines "Single Loss" as "all losses . . . which result from one occurrence," or all losses resulting from "one policy regardless of the number of claims."

The Plaintiffs argue that First American cannot show that each of the insurance claims for

5

which it seeks a deductible payment falls within these terms.  The Plaintiffs' motion on this point is skeletal, offering only abstract arguments that "First American cannot meet its burden to present admissible evidence that each of its claims qualifies as a Loss" and that "First American cannot meet its burden to present admissible evidence that each Loss was paid to an insured." The Plaintiffs do not identify any particular insurance claim(s) for which First American seeks a deductible payment as falling within one or both of these contentions.  First American's response is only slightly more detailed, with First American offering a general recitation of its claims handling procedures.   Although First American has tendered several thousand pages of supporting exhibits – essentially its records of some or all of the underlying insurance claims – its briefing offers no insight into the contents or meaning of the documents – nowhere does First American, or the Plaintiff identify or discuss any particular claim that was paid.

Rather, it appears that the parties prefer to raise arguments at a high level of abstraction. Untethered to any specific facts, their arguments become somewhat difficult to parse.  At best, the Court can only divine one major point of disagreement between them: whether Section 7.2 requires the Plaintiffs to make a deductible payment only in circumstances where First American has made a payment on a claim directly to an insured (the Plaintiffs' position), or whether such a deductible is required even when First American makes payments only to third-parties, but does so on behalf of an insured (First American's position).  This dispute is premised on the phrase "actually paid to. . . the insureds" language in Section 7.2.[3]

---

[3]      First American appears to contend that this language is part of a larger phrase – "in no event to exceed Five Hundred Dollars . . . on any Single Loss as defined herein actually paid to any . . . of the insureds" – that stands as an alternative to a different phrase in Section 7.2 – "[Plaintiffs] shall reimburse First American up to a maximum amount of Five Hundred Dollars." Thus, First American's argument is that the "shall reimburse" phrase creates a general obligation on Plaintiffs to make deductible payments regardless of whether First American pays an insured directly, whereas the second  phrase defines a limitation preventing it from demanding multiple

The Court declines to address this dispute in abstract terms.   It appears that payments made by First American on title insurance claims could take many forms and serve many purposes.  Some might be payments directly to the insureds.  Others might be payments made directly to an insured to pay fees to the insureds' attorney, or payments made directly to the insured's attorney on the insured's behalf.  Others could be payments to third-parties in satisfaction of claims or judgments against the insured, or payments to third-parties' counsel.  It may be (although the Court offers no opinion) that both sides' interpretation of Section 7.2 is incorrect, and that some of these types of payments on behalf of (but not directly to) an insured might trigger a deductible payment by the Plaintiffs, but other types of payments do not. Without a specific, precisely-defined factual pattern against to address, the Court is unwilling to attempt a generalized construction of the contractual language that may still result in disputes between the parties over its specific application.[4]

Accordingly, the Court denies both parties' motion for summary judgment with regard to First American's counterclaims, as well as the Plaintiffs' motion for summary judgment on their claim for a declaration of non-liability.  Those claims shall await trial.  For trial, the Court urges the parties to focus their dispute as to particular claims and the characteristics that bring them within or outside of contract terms.

### C.  Plaintiffs' claims

Assuming, for the moment, that some of First American's counterclaims have merit, the Court proceeds to address the remaining portions of the Plaintiffs' motion.  The Plaintiffs

---

deductible payments where an insured's claim involves multiple policies or multiple claims are made on a single policy.

[4]       Moreover, to the extent that there is an ambiguity in the meaning of Section 7.2 or any other pertinent provision (and the Court expresses no opinion on that point), the parties have not submitted any extrinsic evidence that would shed light on the parties' intent.

contend: (i) that the 2009 settlement released some of First American's claims, and (ii) other claims by First American are barred by the statute of limitation.

### 1. Release

In or about 2008, the parties engaged in litigation over various issues.  That litigation was resolved by a Settlement Agreement entered into by the parties (or their predecessors) on September 1, 2009.  Paragraph 7 of that agreement reads:

> Excepting the obligations that are expressly set forth in this Settlement Agreement, as of [September 1, 2009] First American releases and forever discharges [the Plaintiffs] from and against any and all claims, damages, actions, causes of action, [etc.], known or unknown, which First American now has, claims to have or could have claimed to have against [the Plaintiffs] . . . arising out of or relating to the following:
>
> (a) any Underwriting Agreement . . . except as set forth in Paragraphs 2 and 3 of this Settlement Agreement.

Paragraph 2 of the Settlement Agreement stated:

> The parties agree that as of [September 1, 2009], except as expressly set forth in Paragraph 3, all Underwriting Agreements between [the Plaintiffs] on the one hand and . . . First American on the other hand, are terminated.

Paragraph 3 provided that:

> Notwithstanding Paragraph 2, . . . the [Plaintiffs] shall pay to [First American] all moneys due to [First American] pursuant to the provisions of the Underwriting Agreements . . . .  [T]he rights and obligations of the [parties] set forth in Paragraph [7] of the Underwriting Agreements shall survive this Settlement Agreement and the termination of the Underwriting Agreements, and shall continue to be effective. . .

Taken as a whole, this language unambiguously establishes that the Settlement Agreement resolved and released all claims by First American against the Plaintiffs, <u>except</u> those claims arising from "rights and obligations of the [parties] set forth in Paragraph [7] of the Underwriting agreements" (as well as claims for "moneys due to [First American] pursuant to the provisions of

the Underwriting Agreements").   As discussed above, the obligation of the Plaintiffs to make

deductible payments to First American are obligations created by "Paragraph 7"[5] of the

Underwriting Agreement, specifically, section 7.2.

The Plaintiffs offer two arguments in support of their contention that the Settlement

Agreement operated to release any claims First American had against them as of September 1,

2009.  First, they argue that "the Underwriting Agreements contain a specific notice provision

that requires any notice . . . to be delivered in writing" and that "There is no evidence that First

American presented any demand or gave notice to [the Plaintiffs] of any claim."

This is not so much an argument that First American's pre-September 1, 2009 claims

were <u>released</u> by the Settlement Agreement so much as it is an argument that First American has

failed to comply with a <u>condition precedent</u> to suit that appears in the Underwriting Agreement.[6]

(The Plaintiffs strap that argument to the Settlement Agreement by arguing that, because First

American failed to give them notice of its claims, the <u>claims</u> were not extant at the time of the

---

[5]      The Underwriting Agreement contains no specific "Paragraph 7."  The agreement is
broken into various sections denoted by numbers in the form of "x.y," with 'x' being what
appears to be a section number grouping related provisions together and 'y' being a sequential
ordering of the subparts of each section.  Thus, section 7 of the agreement consists of five
numbered subparts, "7.1" through "7.5" (plus an additional sub-subpart denoted at "7.1a").
There is no portion of the document that would appear to be an undifferentiated "Paragraph 7."
Accordingly, this Court understands the phrase "Paragraph 7" in the Settlement Agreement to
refer to all of the provisions "7.1" through "7.5" in the Underwriting Agreement.

[6]      The Court notes that section 7.2 of the Underwriting Agreement does not specifically
require First American to give advance notice to the Plaintiffs of any demand for a deductible
payment, much less require demand before a suit may be brought to recover unpaid deductibles.
At best, section 7.4 of the Underwriting Agreement provides that "each party shall promptly
notify the other in writing of any claim or loss under any title report" (which would, in turn,
arguably give rise to an obligation on the Plaintiffs to make a deductible payment), but that
section goes on to state that "Failure to give such notice in a timely manner shall not affect the
rights of the parties under this contract unless such failure results in actual prejudice to the rights
of the other party."  The Court does not read the Plaintiffs' arguments here to allege that they
suffered "actual prejudice" due to First American's failure to give prompt written notice of its
demand for deductible payments.

Settlement Agreement and were thus released.)  The issue of First American's compliance with

any conditions precedent required in the Underwriting Agreement presents a different issue from

the question of whether any then-existing claims were released by the Settlement Agreement,

and thus, the Court declines to address the Plaintiffs' argument under the guise of interpreting the

Settlement Agreement.  The Plaintiffs are free to demonstrate at trial that First American's

failure to comply with a condition precedent to suit prevents its breach of contract claim from

succeeding.

Second, the Plaintiffs argue that Paragraph 3 of the Settlement Agreement should be

understood to provide that "First American retained the right to request reimbursement under §

7.2 for <u>future</u> claims relating to policies issued after the effective date," but that the release

language in Paragraph 7 operates to release <u>then-existing</u> claims.  Beyond stating this argument,

the Plaintiffs do not point to any particular language in Paragraph 3 that supports this conclusion,

nor otherwise explain how their "past claims vs. future claims" distinction derives from the plain

language of the agreement.  Paragraph 3 clearly recites an obligation of the Plaintiffs to "pay . . .

all moneys due" to First American under the Underwriting Agreement, a concept that clearly

contemplates the Plaintiffs honoring an existing obligation.  Similarly, the same paragraph

contains language that the Plaintiffs' obligations under section 7.2 of the Underwriting

Agreement "survive" the Settlement Agreement.  Such language clearly seeks to preserve any

existing obligations the Plaintiffs had to make deductible payments, and thus, the Court finds that

the Plaintiffs are not entitled to summary judgment on their affirmative defense of release.

### 2.  Statute of limitation

The Plaintiffs seek summary judgment on any claims by First American for deductible

payments that accrued before December 2010, three years prior to First American's

commencement of this action.  In doing so, they rely on Colorado's general three-year limitation period for contract actions.  C.R.S. § 13-80-101(1)(a).

First American argues that the correct statute of limitation to apply is not the three-year limitation period applying to contract actions under C.R.S. § 13-80-101, but rather, the six-year limitation period for "actions to recover a liquidated debt or an unliquidated, determinable amount of money" under C.R.S. § 13-80-103.5.  The longer statute is triggered when "the amount due is capable of ascertainment by reference to an agreement or by simple computation." *Rotenberg v. Richards*, 899 P.2d 365, 367 (Colo.App. 1995).  *Rotenberg* makes clear that, so long as there is a specific and definite formula that would yield a sum certain when applied to a particular set of facts, the parties' dispute regarding those underlying facts does not require the shorter limitation period.  *Rotenberg* cites to *Comfort Homes v. Peterson*, 549 P.2d 1087, 1090 (Colo.App. 1976), wherein the parties' contract called for the plaintiff to pay the defendant a "specific percentage of the estimated cost of the construction of a structure."  Although the parties disagreed as to what that estimated cost was, the court held that the claim was nevertheless one for a determinable amount of money and thus subject to the six-year limitation period of C.R.S. § 13-80-103.5.

Here, the Underwriting Agreements offer a clear formula for ascertaining the amount owed by the Plaintiffs: the full amount of each claim paid to an insured (if the payment was under $500), or $500 (if the payment was more than that amount), for each payment made by First American.  Although the parties dispute whether specific payouts to (or on behalf of) insureds fall within the contracts' terms, that is a dispute as to the underlying facts, just as the dispute over the estimated cost of the building in *Comfort Homes*.  Once the underlying factual determinations are resolved, calculating the amount owed by the Plaintiffs to First American is a

matter of simple arithmetic.  Thus, under *Rotenberg*, First American's breach of contract claims seek a liquidated amount and thus, are governed by the six-year statute of limitation of C.R.S. § 13-80-103.5.  This would render First American's claims timely to the extent that they accrued by December 30, 2007, the date six years prior to First American's assertion of a breach of contract counterclaim in this action **(# 23)**.

First American's records indicate that it seeks deductible payments for a handful of claims by insureds that occurred between April and November 2007.  Thus, the Court must also address First American's contentions that its filing of the Douglas County lawsuit on August 13, 2013 operated to toll the statute of limitation further.  C.R.S. § 13-80-111 provides that "if an action is commenced within the period allowed by this article and is terminated because of a lack of jurisdiction or improper venue, the plaintiff . . . may commence a new action upon the same cause of action within ninety days after the termination of the original action, or within the period otherwise allowed by this article, whichever is later."  Here, First American has failed to carry its burden of showing that the Douglas County action was terminated "because of a lack of jurisdiction or improper venue."  In response to the Plaintiffs' motion, First American asserted only the date of commencement of the Douglas County action; it made no showing whatsoever as to the fact of the termination of that action, the reasons therefor, or the date of such termination.  *See e.g.* Docket # 38 at 22 (mentioning only that the claims were "involuntarily dismissed" by the Douglas County court), Docket # 45 at ¶ 31.  This alone is grounds to find that First American has not shown its pre-December 30, 2007 claims to be timely.

In their reply brief, the Plaintiffs attached a copy of the Douglas County court's order dismissing the action, but that order sheds no additional light on the issue.  It reads "Plaintiffs claims are dismissed without prejudice upon arguments raised in Defendants' briefs.  The Court

finds that this action is the subject of the parties' settlement agreement.  The Court further finds

that no argument and/or evidence has been [sic] by the Plaintiff to support a finding that the

settlement agreement is unfair, unreasonable, or fraudulently obtained."  Neither party has

supplied this Court with a copy of or summarized the "arguments raised in Defendants' briefs,"

such that this Court could ascertain the grounds for the Douglas County court's dismissal.  It

could be that the Plaintiffs prevailed on their contention that the Settlement Agreement's choice

of forum provision rendered Douglas County the incorrect forum, in which case C.R.S. § 13-80-

111 might apply.  Or it may be that the Douglas County court was persuaded by the Plaintiffs'

arguments that the release language in the Settlement Agreement applied, in which case C.R.S. §

13-80-111 would not apply.  Or the court may have been persuaded by some other argument.

Because C.R.S. § 13-80-111, by its terms, applies only when a prior dismissal is for "lack of

jurisdiction or improper venue," First American has not carried its burden of showing the

predicate facts necessary to apply that provisions' toll.  Thus, the Court finds that First

American's claims for breach of contract that arose prior to December 30, 2007 are barred by the

statute of limitation.

First American also argues that, if some or all of its claims are deemed to be untimely

pursued, those claims are nevertheless revived by Colorado's procedure for asserting compulsory

counterclaims revives them.  C.R.S. § 13-80-109 provides that "a counterclaim or setoff arising

out of the transaction or occurrence which is the subject matter of the opposing party's claim

shall be commenced within one year after service of the complaint . . . and not thereafter."  It

also states that "the limitation provisions of this article" – in other words, the general three- or

six-year statutes of limitation discussed above – shall apply "except for causes of action arising

out of the transaction or occurrence which is the subject matter of the opposing party's claim."

*Id.* In essence, the statute "allow[s] a party against whom a claim has initially been asserted to plead a stale claim . . . in response." *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1168 (10th Cir. 2000).

There can be no argument that First American's claims for breach of contract are pled as counterclaims to the Plaintiffs' own claims for declaratory judgment. Nor can there be any disagreement that the subject matter of First American's counterclaims – the Plaintiffs' alleged obligation to make deductible payments pursuant to the Underwriting Agreement – is precisely the same subject matter as the Plaintiffs' own claims, which seek a declaration that they do not owe such payments.[7]

However, in *Tidwell v. Bevan Properties, Ltd.*, 262 P.2d 964, 967-68 (Colo.App. 2011), the Colorado Court of Appeals appeared to limit the application of C.R.S. § 13-80-109 in cases where the plaintiff's initial claims were solely for declaratory relief. It stated that "a declaratory judgment action is not a 'claim' triggering the counterclaim revival statute because it does not seek affirmative relief against the defendant. In our view, the statute contemplates a plaintiff making a claim seeking relief which alters the relationship between the parties, not merely declaring what that relationship is." Although *Tidwell* involved a suit where the plaintiff's only claim sought a declaration that the statute of limitation had run on any putative claim by the defendant, the rationale of *Tidwell* would similarly apply to any claims that seek only declaratory relief in a defensive capacity – *e.g.* claims seeking declarations that the plaintiff is not liable to the defendant because of release or non-liability. Although the "absurd result" contemplated in *Tidwell* – a claim seeking a declaration that the statute of limitation has run on an alleged

---

[7]     The Plaintiffs argue that their declaratory judgment claims "primarily involve interpretation of the Settlement Agreement." This gives short shrift to the third claim for relief that expressly seeks a declaration that the Plaintiffs "have no liability to First American for claims [for unpaid deductible payments] pursuant to § 7.2" of the Underwriting Agreements.

liability allows the other party to assert that very same stale liability as a counterclaim – is not

necessarily present when declarations of non-liability are sought on other theories, the fact

remains that these declarations do not "alter the existing relationships between the parties" any

more than a declaration based on statute of limitation does.  Thus, this Court concludes that

C.R.S. § 13-80-109 does not apply where a plaintiff's initial claims seek only defensive

declaratory relief.   Here, with the exception of a claim for attorney fees, all of the Plaintiffs'

initial claims against First American seek only this type of defensive declaratory relief.  This

court does not believe that the "claim" for attorney fees – a *pro forma* remedy that allocates the

costs of a party seeking a declaration under the parties contract – meaningfully alters that

conclusion.  Accordingly, any stale breach of contract claims by First American are not rescued

by C.R.S. § 13-80-109.

Accordingly, the Plaintiffs' Motion for Summary Judgment is granted in part, insofar as

the Court finds that any breach of contract claims asserted by First American that accrued prior

to December 30, 2007 are barred by the statute of limitation, but that claims accruing after that

date are timely brought.

## CONCLUSION

For the foregoing reasons, the Plaintiffs' Motion for Partial Summary Judgment (**# 37**) is

**GRANTED IN PART**, insofar as the Court finds that First American's claims accruing prior to

December 30, 2007 are barred by the statute of limitation, and **DENIED IN PART** in all other

respects.  First American's Motion for Summary Judgment (**# 53**) is **DENIED**.  The Plaintiffs'

Motion to Strike (**# 69**) is **DENIED AS MOOT**.  It appearing that this case will be proceeding to

trial, the parties shall promptly begin preparation of a Proposed Pretrial Order pursuant to Docket # 27 and shall jointly contact chambers to schedule a Pretrial Conference.

Dated this 20th day of March, 2015.

**BY THE COURT:**

Marcia S. Krieger
Chief United States District Judge